Good morning, Your Honors, and may it please the Court, Peter Afrisiabi, on behalf of the appellant, I will try to reserve three minutes of my time for rebuttal. I think a core central error that has ramifications in terms of the other issues in this appeal is the implied license finding of the District Court. And this error is imbued with significant procedural problems, and then is substantively wrong in large part because of the procedural nature of what happened below. And I think this is very significant in terms of what the problem then has occasioned out of this in terms of the record. Implied license under copyright law is an affirmative defense, and it was not pled here by the defendants, and it wasn't moved on in their summary judgment motion, or even in their reply papers in summary judgment in terms of implied license. It trickled out of the case in terms of the conversation with the District Court because the only thing moving on was express license. Then in their final brief, they claimed it was waiver, estoppel, or acquiescence, which of course is an equitable affirmative defense. And the factual undergirding of that third affirmative equitable defense was we sent reports, there was no objection. The District Court then erred when it took that idea that what was being presented to it in the third affirmative defense as an equitable one, had something to do about failure to object, and transported that into the realm of what is a legal defense, and what is the question of an implied contract. And I think the error crept in because it cited to a Seventh Circuit case of IAE, and IAE actually, in the rest of the opinion, did a complete analysis of implied contract citing to this circuit, the Senate law, which is really the law around the nation that most courts go to, effects associates. Your effects associate case. Let me direct you to a problem that I'm having. It's clear one of the issues we are looking at is was there sufficient evidence of infringement presented to the District Court, correct? That's one of the issues, yes. So I'm having trouble identifying any admissible evidence that you presented to the District Court of infringement within the relevant period. I know there's an issue about what the relevant period is, but I've looked hopefully carefully at all of the evidence that you have cited as admissible on infringement, and I'm having a lot of trouble with it. So why don't you tell me what your view is as to why the declarations and attachments to those that you submitted created a triable issue of material fact as to infringement? Sure. The infringement here is infringement of the public display right. Yes. Okay. Which is very important because we got balanced under the best evidence rule is what I think you're alluding to, Your Honor, in terms of the evidence not being admissible because the court was not given what it perceived was the requisite quantum of evidence to meet the best evidence rule. The problem with that is that when the public display right is an issue, the best evidence is someone saying, I saw my work being displayed publicly. So why not a screenshot? A screenshot would be a version of a public display, but it still isn't actually the underlying work. The work is code on a website. Where in the record is that? So I have in front of me the declarations. I have in front of me the log file. I have in front of me the declaration supposedly supporting the log file. Where is the evidence that work A was publicly displayed by sub-licensee B on a particular date? Sure. The Del Monte Declaration attached to it lengthy spreadsheets. They cover volumes of this record. And those spreadsheets break down the actual websites where the image is from. I have the Del Monte Declaration in front of me. Tell me what paragraph you're talking about. ADR 2016. Let me grab it. But ADR 2016 isn't a declaration. Sorry. It's a letter. The declaration is 2013. Right. You're on a paragraph. So 2013 authenticates. Paragraph 59 talks about portraits in 2013. And what he does is incorporates into his declaration the letter analysis, which is on page 2016, which says. So you are looking at what paragraph? 2013. Paragraph 2 says attached is Exhibit 59 is the summary on portraits in 2013. Well, it says it's a summary I prepared relating to portraits in 2013. Correct. And then he says the facts stated in Exhibit 59 are true, and I incorporate the contents into this declaration. So it says in Exhibit 59 here is a file with a bunch of things that he found in 2013. Yes. What Exhibit 59 on page 2016 says is we went to these websites, and those websites served up the images. Paragraph 1, they're hosted on there. If you go to the very last paragraph, it says a complete list of all sites showing the EVOC stills is listed, and they're listed. Now, what we also then have in the record is if you go to 2 ER 210, for example, you have from 2 ER 210 all the way through Volume 5 ER 1113, the portraits 2013 copyright infringement documents. And what they show at the top is, and this is for all the pages in the forms, portraits copyright matching for 10 MAX report 2013, 2013, April 29th, which is the 2013, April 29th, Exhibit 59. And what it shows then is the actual URL of the portraits and the dealer's websites where the images were served, were stored, and where they were served up and retrieved, because that's the only way one can publicly find anything. And this is what's important. What's listed in there is it says stills, and then it has an image number, and that's a unique EVOC's image number. EVOC's gives when it licenses out its images so that it can trace them. And in the final column is the copyright registration certificate. And that's... What page are you on? I mean, I just happen to be looking at pages. There's hundreds of these pages, but if you go to 2 ER 371, that's one. I mean, you can pick almost any page within the back end of Volume 2. But what it's showing is the JPEG name, which is just a series of numbers that EVOC's gives it. It doesn't say, like, you know... This is similar to what was attached to Mr. Arledge's... Correct. Correct. Yes, Your Honor. And so how does Mr. Arledge, for example, authenticate this? Because Mr. Arledge was counsel for EVOC's below, worked with the documents, and he did authenticate it, and no one objected. Well, what I'm reading is these are examples of the raw data collected by Michael Del Monte and Barry Thompson when they observed the portraits sites placed into spreadsheets. Is that the authentication? Correct. I think you're talking about 2 ER 108, Your Honor. Yes. I think that's correct. How does that work? I mean, he's saying these are examples of something done by somebody else. Yes. I think he had personal knowledge that those people did that, and he said it, and no one objected on the basis that that was a lack of foundation or authentication. That wasn't an objection made below. The objection made below is that that's not evidence of infringement, because what we want to see is a screenshot. That was the argument below. And our point was a screenshot is an example of a public display, but it's not the only one. I mean, if Arthur Miller walks past a high school and sees his play being performed, he can say, I saw my play being performed to prove the infringement on the public display right. Now, to prove the existence of his copyright in the crucible, he can't just say, I kind of wrote this thing and it was similar to the play. Then, Your Honor, we would have a problem if someone's challenging the validity of the copyright on that factual basis, and they didn't move on that. They reserved it. That's what we noted in Section 1 of our reply brief, which is so important, because that's where the best evidence rule becomes there's this sort of inconsistency in the argument the other side is making. They're acting as if they moved on the basis that we need to see your actual copyrights. You didn't show them, and then they cite the Lucasfilm case. But they didn't move on that below. They conceded. Well, that's an argument for trial. What they moved on was only no infringement. They didn't even move on substantial similarity, which is the Lucasfilm case. And that case is critical, because that case said, yes, the plaintiff there claimed that he created these Garfinian Strider things. No copyright registration given, and he didn't even have evidence of what he created. He just said, George Lucas must have seen them somewhere. And when he made the Imperial Walkers, they looked kind of sort of similar. And I'm suing for infringement. And this court said, you have to have more than that on substantial similarity, because we're comparing two different things. This case doesn't involve the question of, are we comparing Evox's photographs, one of those JPEGs in those spreadsheets, to something kind of sort of similar that may be a bit different? Because they were licensees. It's the same object on each side of the ledger. And if you step to 30,000 feet, just think about it. They're selling cars, and these are photographs of cars. They weren't creating derivative works and morphing the photograph of a BMW into sort of a Batmobile or something, right? To sell the BMW doesn't make any sense. It's the exact same photograph. That's why they didn't move on substantial similarity, because it's the same object. So. That's sufficient. Absolutely. Yes. And it wasn't just Del Monte. Mr. Thompson said the same thing in his declaration, that Mr. Del Monte did that report and analysis, locating the websites and where they're located. He's not an expert, right? He was, I don't believe he was designated as an expert below, no. He's a consultant for Evox. He may well be an expert. He wasn't designated. I don't believe, no, he was designated. And so, this is not being offered, this declaration is not being, was not offered as, for example, an expert report. No, it was being offered as a percipient. As lay evidence from a percipient witness. Correct. And it establishes, then, the hosting and serving and the public display of the images. Enough to create a tribal issue effect. So, this is why I want to quickly go back to the implied license issue, and why it's so important. Even if this court concluded that the district court was correct, the city said, okay, we're going to shoehorn this thing into an applied license and agree, even then you have to reverse for two other reasons. The district court's conclusion as to when the implied license terminated, for POTRAC it said the implied license goes to July of 2013. But it's undisputed, they didn't shut off POTRAC's access until April of 2014. So, even under an implied license, there's still a period of what is only copyright infringement. The same thing for other publishers. The implied license, according to the district court, ended March of 2014. Just to pause you on POTRAC. So, if we agree with you about what you just said, that there's this period into 2014 that could be a problem, where is our evidence of what was posted in 2014? What we just spoke about, because what's found in 2015 was there before. So, how do we know that, this is my question, how do we know that it was continuous? Because the photographs that my clients had licensed years earlier were still being publicly displayed. They weren't updated because the relationship had completely ended. Is there any information that we can find from the declarations or something that says they weren't posting different things on different days or something? I mean, how do we know they were posted in 2014? Because there was no commercial relationship to even be delivering the images. From my client's perspective, past 2011, but even according to them, past 2013 or 14. But they were publicly available on the website, right? So, how do we know they weren't, like, in a drawer, and then one day they're up, and one day they're not up? Well, I mean, practically, that was never the nature of the commercial relationship. But also on POTRAC, he did the same analysis in 2013 where there's about 148,000 images. But so, where in the evidence here do we know that anything that was in 2015 had to have also been in 2014 available for public viewing on the website? It's implicit because there's no other possible way they could have had the images unless they had secured them earlier. These are images tied to… Securing them isn't the problem, right? Displaying them is the problem. Yeah, but the commercial relationship was always built around display. I mean, that's the whole point. There was never a commercial basis to license images and warehouse them. I mean, that wasn't the nature of the party's commercial relationship, the entire relationship. And you can look even at their declaration of jazz, where he says, I mean, this is a commercial relationship of AVOX's images being used to deliver to their people, to which they started competing in 2011, which is why 2011, we say you shouldn't have been using our stuff anymore. They say 2013 or 14, but whichever way you look at it, the stuff was given at the latest up until then, and it's still there in 2015. So, counsel, on that point and following up on Judge Freeland's question, so I have Mr. Del Monte's declaration in front of me, and I know you do too. Is there anything in Mr. Del Monte's declaration that, for example, actually says any particular image or group of images that I identified in 2013, that those same images were there when I went back and looked in 2015? He doesn't say that in his declaration, and I haven't actually compared the thousands and thousands of blind, the 150,000 to 200,000 to give you an instance. But, I mean, I would submit it's almost inconceivable that there isn't staggering overlap between the 2013 and 2015 images. But what he found and what he said is they're there, and they don't have the right to use them in 2013 and 2015. Which ones exactly? Yeah, that will be sorted out by the jury. That's a factual ultimatum for the jury to decide. But they existed and were being publicly displayed after the 2011 date, which is when the district court said a reasonable jury could conclude you had no rights after 2011. The final point I want to make, which is so important, is even on the applied license in that window of time where there's a difference between the district court and even their payments, there's the other issue, which page 27 of our reply brief we outlined for WebNet, which was going on, which is even the uses being reported were under-reported. I mean, we just identified WebNet as an example for you, where at most if you look at their payment reports, there should have been five websites. There's at least eight with a bunch of sub-websites. So if you have under-reporting going on, there can't be an implied license to use that which you didn't report. I see I'm well over my time, and I appreciate your honors. Yes, and it's a complicated case. We'll make sure you have some time for it. Thank you so much. Let's hear it from the other side. Excuse me. Thank you, Your Honor, and may it please the Court, Brian Legel for the appellees. I think a number of the Court's questions went to the core of what we think is problematic in this case and the reason for affirmance, which is there's no evidence that was submitted on summary judgment to support an infringement claim. Putting aside the issues of secondary infringement, the license issues, at the core plaintiff concedes there must be evidence of a direct infringement. Copyright infringement, whether it's a public display right or some other right, requires a showing of Exhibit A, the copyrighted work, and Exhibit B, the infringing work, so that a person on the trier of fact, the jury, can compare the two and establish whether or not there's substantial similarity. Even in the Bell case that Evok cites, this Court made that observation. There's no issue of substantial similarity here. It is the same image. That's the contention, at least, right? That is the contention. There's no evidence of either Exhibit A or Exhibit B, so absolutely it's contested. Okay, but I guess I'd like to hear your direct response to your opponents. Are we just talking about the best evidence rule? That's what we're focused on? Well, no. Okay. We're not. So even the best evidence rule, we submit the District Court certainly correctly applied, and there was certainly no showing of abusive discretion, which is the standard under which this Court would have to review that ruling. But the District Court and the magistrate judge before the District Court both observed that whether or not that evidence was admissible, it wasn't good enough to establish copyright infringement because it never showed either the copyrighted work or the infringing work. So there was nothing for any trier of fact to compare, ever. There was no evidence presented of any copyrighted work, actual copyrighted photograph, and there was no evidence presented of any infringing photograph. Let me ask you about Mr. Bartlidge's declaration, which was submitted, as I understand it, in response to the District Court saying, I want more on the best evidence rule. Do I have that right? That is correct, Your Honor. Okay. So I'm looking at this ER-124. Yes. This log report, and it has on it the URL that are JPEG photos, the file names, and the copyright registration number, which I guess is all the same. So why shouldn't we read this as saying, here is the web address of the infringing photograph. Here is the file name of the infringing photograph, and here is where it was protected in the copyright registration number. Why isn't that sufficient evidence? So I think there are a couple of answers to that, Your Honor. So the first is, this particular exhibit, as I think Your Honor observed, was not submitted by anyone purporting to have personal knowledge of the situation. So it's right on that ground. We did, Your Honor. Okay, so your friend is incorrect on that. My friend is incorrect, and I would also note this was submitted in a sort of supplemental brief. But it's still on the summary judgment record. It is in the summary judgment record. It's post the issuance of the findings and recommendations before the district court. You objected on the ground that this is not personal knowledge. We noted that the extent of Mr. Arledge's authentication was effectively that this was a document that was produced in discovery, that Mr. Del Monte never authenticated this as something he created. There was no witness who suggested that this was a document reflecting anything. And further, we noted that if you look at the top of page 124, it indicates it was a report compiled on April 29th of 2013. While there's no one to authenticate that date, if we assume that that's correct, that date is outside the limitations period, and thus would further make this irrelevant evidence of anything. Okay, I'm sure you're right, but point me to where that 2013 date is. Sure, if you look on page 124, Your Honor, there's the table. And above, I see Telemec's report 2013-4-29. Correct. I'd like to know, just assuming we got passes all over the issues you just raised, what's the problem, assuming this was properly authenticated and assuming it related to a relevant time period, what would be the issue with this? Well, Your Honor, so there's nothing here. There's a list of some file names. There's nothing here. No evidence is presented that this particular file has an image that is, in fact, an image that was registered with the Copyright Office. I thought he said, I went to this website, I saw this image, and it's the exact same image as the one that's in this copyright registration. No one testified that they ever looked at a copyright registration to see if an image was, in fact, a copyright-registered image. There's no testimony from any witness in the record at any point that anyone looked at a copyright registration, a deposit photograph, and said, ah, I'm looking at this photograph, and I'm looking at another photograph, and they're the same. That testimony does not exist in the record, ever. And you don't think this chart is a summary of that, those very facts? Absolutely not. Why not? It's purporting to, that's what it seems to be. It's identifying a file. So, first of all, there's no evidence in the record. This suggests it was compiled by Mr. Del Monte. Now, I would note that Mr. Del Monte never testified about this particular document. His declaration doesn't explain any of these matters in detail. To the extent he's suggesting that what I observed is a particular photograph, he's testifying about the content of a photograph in that instance. At that point, the best evidence rule unquestionably prohibits that testimony, because it's oral or declaratory testimony as to the content of a photograph. The case law is very clear that's impermissible. What about the example that your opponent gives? Let's just say instead of someone watching, you know, seeing a play being performed, somebody is out publicly displaying your photograph, and you walk by it. I witness that. I attest to it under oath. And I say it's the same photo that I have as a copyright registration, and that would be fine, wouldn't it? No, actually, it would not, Your Honor. And that's why I need to take a picture of the person holding the photograph up. You need some sort of, to the extent you're arguing that a particular photograph and what its content is, Rule 1002 requires that you present the photograph. Now, is that unique? Is this purported rule unique to copyright? It is not. Okay, so let's say my house gets robbed, and someone takes, I have in my house the original of the Mona Lisa. And I am outside, and I see somebody carrying my Mona Lisa. And I know that that's the Mona Lisa that was in my house. And at his criminal trial, I would not be allowed to say, I saw Defendant A carrying the Mona Lisa, which I can identify just from the part of the picture, was in my house an hour before. You can testify that the physical object was the object that you had in your house. Even though it's a painting. Even though it's a painting. In the same way that we don't allow witnesses to substitute testimony about what a document says for the document itself. Rule 1002 is explicit in its reference to photographs and the testimony about the content of photographs. The Advisory Committee notes, make clear that copyright is one instance where this is an important rule. That's what this Court held in Siler. There's no case suggesting otherwise that you can substitute testimony and say, that's my photograph for the trier fact being able to compare photograph A and photograph B. I do have to get out my cell phone and take a picture of the person who's standing out there in the public to explain my document. The short answer is yes. You have to have evidence of the content of what you're claiming, where that content is the relevant fact and issue. I mean, I suppose, though, the best evidence rule admits of exceptions. It does. So if, for example, it was a transitory viewing and you had no camera and the person immediately after you saw him burned it, then you might have an exception under the best evidence rule if it applied. That's correct. There are certain exceptions under the best evidence rule. None of them apply here. But there are instances in which, for example, bad faith destruction of the original by the person against whom it's being offered can be considered. That's certainly a circumstance where something might be in play. In the district court case from Maryland that EVOX relies upon, the underfoot plant, there was a photocopy of the copyrighted work that was presented as opposed to the certified original. And while the court ruled that any objection was untimely, it also noted that there was no argument that the original and the photocopy were identical. That was an exception that was acceptable for the best evidence rule. Could I just ask, this seems like an odd fact pattern, though, because there was a contract that gave a license to these images, and it seems like the dispute is whether they stayed up for too long, not really whether it was the images. So do you have any case where it's analogous, where the dispute is really just about whether something stayed somewhere rather than about what the image was? There are cases in which it is conceded that two images are the same. The Courts of Battle case, for example, the defendant did not dispute that the image that was at issue was the copyrighted image and that that was what was stored on the defendant's server. And so the court noted, however, that had that not been the case, the next step in the analysis would have been required the fact finder to look at the two images to determine whether there was substantial similarity. That wasn't an issue there. But here, that is an issue. We don't know what images were displayed on any of these websites because there's no evidence in the record from which we could make that determination. So you're saying you eventually think you would have disputed whether the images had stayed the same? We think that, well, I think we dispute that there was any image displayed, and without, it's the plaintiff's burden, obviously, to come forward with the evidence of the copyrighted image and the infringing image so that that determination can be made. It is an odd case when neither is presented. I will agree with that, but that's because it's an odd case where the plaintiff fails to present any evidence of either the copyrighted work or the infringing work. I suppose I should know this, and I apologize that I don't, but did plaintiffs designate any experts in this case? They did not, Your Honor. They did not. You would agree that this might be different if, for example, Mr. Del Monte were an expert? It's possible. I think it would depend on what kind of expert we're talking about. I don't know that I could imagine circumstances in which there might be an expert who could offer testimony about two photographs being the same. That is possible. That's certainly not the case we have here. For example, I suppose if you had evidence of the two images, an expert might perform a digital comparison and offer testimony about whether or not the two files were the same, things of that nature. No such evidence exists in this record. Is your argument about the best evidence rule just a blanket rule, or does it depend partly on what you see as inadequacies in the Del Monte Declaration? Like if Mr. Del Monte said, I am the photographer, I took these pictures, I see my pictures, would the best evidence rule still apply because it's a blanket rule, or does it sort of turn on the contents? I believe it would still apply under the court's case law, Your Honor. I think it's possible to imagine different fact patterns where exceptions might apply. I don't think what you've just articulated would be one. I think the best evidence rule still says, especially in the case of a copyright, if you want to make an argument about a copyrighted photograph, you can't offer secondary evidence as to the content of that photograph. You have to offer the original or, at a minimum, an actual, exact, undisputed copy thereof, not secondary testimony or argument about what it might or might not be. Following up on Judge Freeland's question, as a theoretical matter, your view, however, is that if we were to rule in your favor, we would not have to go that far because even if there were such things, such possible exceptions, they're, in your view, not present here given what the actual evidence was. That's correct. We would submit that the Del Monte Declaration falls far short. It does not ever actually say, I looked at photograph A, I compared it to a copyright registration and determined that the same photograph was in the registration and on a particular website as of a particular date. That's not in his testimony, either in his declaration or in any of his report materials. And I would note that the page your Honor and I looked at a moment ago from Volume 2 of the appendix, or the excerpts 124, that's not something that was attached to Mr. Del Monte's declaration. It was not authenticated by him. It wasn't submitted by him. It wasn't suggested that it was. Counsel referred to vast volumes of material at Volume 2 through Volume 7 of the excerpts of record. None of that material was attached to Mr. Del Monte's declaration. None of it was authenticated by Mr. Del Monte. It was submitted by Mr. Arledge, who could testify that it was material produced in discovery, and that's it. There was nothing suggesting that that, there was no competent witness compiling that and suggesting that it was part of Mr. Del Monte's analysis, and as noted, even if that had been submitted, the other problem here is, of course, that that was material compiled outside the limitations period, which also would make it completely unhelpful for any of the issues before the court. I would just sum up. Basically, to the extent there was even a modicum of not sufficient evidence, it was not sufficient evidence presented about things that happened outside the limitations period. So there are sort of a cascade of reasons why the district court's judgment could be affirmed, as we articulated in the briefs. Okay. Thank you very much. Let's put two minutes on that. Michael, please. Thank you, Your Honors. I will be brief. Let me just say, a photograph of someone doing something is not the original of them doing it. The copyright standard for a public display when you're talking about the Internet is, it's an electronic event. An oral testimony about what you see on the Internet is not the original of what's on the Internet, any more than a screenshot is. They're both people or versions of describing what's on the Internet, and this is why 1002 is important. Original in 1002, for electronic information, includes printouts, which is what these are, because an original is coded 0 and 1. It's sitting on a server somewhere. Someone has to say it. Let me also point, we're on page 124. If you go to 126, which is the additional set of documents that are in the record, these are other examples that Mr. Arledge did provide, which come from Mr. Belmonte, and these have copyright registration certificates. They have URL addresses with the JPEG number in them, and they also note in the middle of even the URL address that it's EVOX, because they're EVOX images. So this idea that we have no idea, we don't know what's going on, doesn't make any sense. It's a licensing relationship. Let me end on this point. If you go to 7ER 1847, this is a deposition, lines 4 to 11, home there says that they sublicense, or they say that their sublicensees download and host the images. That's what they say they did. The other exception to the best evidence rule is if you can't get the original information, the original isn't on My Client's servers. It's either on their servers or their sublicensees. They said, our clients, Potratz, downloaded it. You go to Potratz, Potratz, their original letter to My Client in volume 16, they said, yeah, we downloaded it. Then in the deposition of Potratz, this is 2ER 111 to 121, they say, oh, we don't have it, Chrome has it. Chrome's deposition at the site I gave you at 1847 says, we don't have it, they have it. My Client can't be faulted under the best evidence rule for not having the original code off of their servers. It gave the best thing it could get when we're talking about a public display. That's why public display is so unique. Photograph. I don't understand why you can't take a screenshot and say, this is the website it was on, and this is what it looked like. My Client could have done that, and that would be 200,000 screenshots. And perceiving that as being. You give them to the court. I don't understand why that was so hard, or why you didn't do it, especially once they started raising the issue. Because they didn't move on substantial similarity, Your Honor. They never said, we don't know what images you're talking about. I mean, they could be different images. They're not Evox images. Maybe they're Batmobiles. They never said that. So it was never remotely understood that what was being litigated was some argument about how, well, we may have images, but they may not be your images. But it just doesn't seem that hard to cut off. I mean, so then you give the images. If they want to make the argument they're not the same, then you face that. But right now they're saying we don't even have the images. I'm trying to figure out, are you like trying to use this case to create precedent for some rule that is important in some way? No, not at all. This has nothing to do with anything like that. We weren't asked the issue that's now being raised. Our perception was here are log files showing the URL where the image was located. Same Evox image with our unique number that ties to a registration certificate. And they're not all the same if you go through, by the way, the registration certificates. There's loads of different ones. They've been tied to the actual registration certificate. And they were on the servers on that time. Our perception is the best way to show what is being publicly displayed on the server is the link to the server. If we give a bunch of screenshots, then we could be told the same thing. Oh, well, we don't know what that is or where it is. You could have just made up the URL. You could have made up the screenshot. Because it itself isn't the original code. And that's the problem. And so I think this is why it's so important to sort of make sure that this case doesn't morph into what is a reproduction case. Because it's not a reproduction case. It's a public display case. Reproduction, yes, if someone has copied something out of their servers, a public display question wouldn't be the same. But because we're not arguing an illegal reproduction. We're arguing an unlawful public display. Alt quantum, in the nature of what a public display is when it's on their servers, under the best evidence rule, is simply that which we gave you. It's the log files are a perfectly good example of electronic information. I appreciate the court's time. And I recognize I'm over at submit unless you have any more questions. No, we don't. Thank you very much for your arguments. Thanks to both sides for your helpful arguments in this difficult case. In case you're starting to submit it.
judges: WATFORD, FRIEDLAND, BENNETT